Argued January 9, affirmed January 22, 1964

## CRAWFORD v. SEUFERT

388 P. 2d 456

*Charles R. Mowry,* Portland, argued the cause for appellant. With him on the briefs was David W. Dardano, Portland.

*Bruce Spaulding,* Portland, argued the cause for respondent. On the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McALLISTER, Chief Justice, and O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

GOODWIN, J.

This is an action for damages arising out of an automobile collision. The plaintiff appeals from an order setting aside a verdict in her favor and entering judgment n.o.v.

The sole issue is whether there was sufficient evidence to make out a jury question on the causal relation between the collision and the plaintiff's physical disorder. The plaintiff alleged in her complaint that the accident caused her to suffer "severe and permanent perforations of the diverticulum." The complaint alleged further that the "perforations of the diverticulum" produced an abscess formation in the "mesasigmoid."

The collision produced no outwardly apparent injuries at the time. The plaintiff said she slid across the seat of her automobile and hit the padded arm rest on the right door. The next day she felt some discomfort and recalled that there had been, at the time of the accident, a sensation of "burning pain" in the lower right side of her abdominal region. She reported "a tearing sensation" to her doctor, who suspected that she might have suffered an injury to a recent surgical repair of a hernia. He treated her accordingly with medication for the relief of pain, and prescribed rest and heat therapy.

Thereafter the plaintiff went on an automobile trip which took some two weeks. Upon her return from that trip, she again felt discomfort, this time on both sides of the lower abdominal region. Her doctor eventually discovered evidence of a mass in the mesentery, along the sigmoid colon. The mass was removed surgically, and routine laboratory procedures were followed (to discover whether the mass was malignant). The laboratory procedures were not

directed to the discovery of the exact nature of the mass, nor to its connection, if any, with the sigmoid colon. There was other evidence in the record to the effect that the plaintiff was suffering from a more or less chronic degenerative ailment of the colon known to the medical profession as "diverticulosis" and to laymen as pouches or bulges along the wall of the lower portion of the large intestine. Since the sigmoid colon functions primarily as a storage facility for digestive waste, these diverticula are undesirable, and, when perforated, are troublesome.

Because of the narrow issue presented by the plaintiff's pleading, the only question of importance in this case is whether there was medical evidence to support her assertion that the particular perforation of a diverticulum of which she complained was induced by something that happened in the collision. It is on this point, then, that we scrutinize the doctor's testimony:

"* * * * *

"Q * * * Now, Dr. Patton, in your first consultation with Mrs. Crawford, immediately after November 17 of 1960, and the history as she re-related it to you, together with your diagnosis, examination, treatment, surgeries and in following this condition for a period of, well, it's been now year and a half or so, as an expert, are you able to give an opinion as to any probable connection between the automobile accident and the injuries that Mrs. Crawford sustained?

"A Yes.

"Q What is your opinion, Dr. Patton?

"A Well, I think this whole situation started with the accident. We didn't know exactly what it was all along, and we think that she somehow

perforated one of those diverticula into the mesentery, developed this mass.

"* * * * * *."

On cross examination he testified:

"* * * * *

"Q * * * Is the condition of perforated diverticula very uncommon with people that do have diverticula?

"A No, I don't think it's too uncommon. It's one of the complications of diverticula.

"Q What causes it?

"A I don't know.

"Q In other words, people can have—who have diverticula anyway, they may well have perforation of those diverticula with no known reason, is that correct?

"A Yes.

"Q Well, is there speculation in the medical profession as to what causes it?

"A Oh, speculation on everything in the medical profession.

"Q But the doctors just don't know?

"A No.

"Q Now, you first suspected the perforated diverticula on January 3, 1961, didn't you?

"A When we operated, that's the only time.

"Q That was January 4, then, 1961?

"A Yes.

"Q You had no evidence of perforated diverticulum before that?

"A No. We put that down in the differentiation, on my notes here, felt there was an abscess formation, infected hematoma. Diverticulum was the abscess formation.

"Q And that was on the occasion of your operation?

"A That was the day before, when we examined her and found this large mass.

"Q Yes, on January 3?
"A Yes.

"Q And you operated on January 4?
"A Yes.

"Q Now, did you actually see a perforated diverticulum when you operated?
"A No.

"Q And you thought that that's what it might be, was one of several things, wasn't it?
"A Yes.

"Q On that occasion, assuming that it was a perforated diverticulum, was there any difference between this diverticulum that you didn't see and any other perforated diverticula?
"A Oh, yes.

"Q What was the difference between this perforated diverticulum and any other perforated diverticulum?
"A There are two types—three types, you might say, of perforated diverticula. One will perforate to the outside into the free abdominal cavity. They will become sick immediately. Another will perforate into an adjacent organ, like a bowel, the bladder, or other portion of the bowels. The others will perforate into the mesentery and they will take a long time to develop.

"Q You didn't see any perforated diverticulum in this patient at all, ever, did you?
"A No. I doubt whether you could ever find one like that.

"Q So what I'm trying to ask you is whether there was any evidence of any difference between this perforated diverticulum, whether it went into the mesentery, or where?

"A Yes.

"Q Any difference between that and anybody else's perforated diverticulum that went the same place? In other words, you're just assuming that this—that it was a perforated diverticulum into the mesentery, aren't you?

"A Yes.

"Q So was there any evidence from your examination—

"A That this would be different than any other kind?

"Q Yes?

"A No.

"Q Diverticula do perforate into the mesentery?

"A Yes.

"Q And you don't know why?

"A No.

"Q Is that correct?

"A Yes, that is correct.

"Q And then you necessarily had to speculate in this case, based upon the history of the accident that had been given you, that that would be a cause?

"A Yes.

"Q And that's the basis of your opinion?

"A Yes.

"* * * * *"

■■ The net result of the doctor's testimony was that he could not state an opinion that would help the jury to decide what caused this particular diverticulum to perforate, if, indeed, there was a perforation. His testimony on direct examination was only slightly

better than the testimony this court held to be insufficient in *Hutchison v. Aetna Life Insurance Co.,* 182 Or 639, 645, 189 P2d 586 (1948):

> "* * * [The doctor] answered, 'Well, from a medical and surgical standpoint, it strikes me that this whole thing which was the active cause of this was an accident which the man had.'"

On cross examination in the case at bar the doctor admitted that his opinion rested upon speculation. For medical opinion testimony to have any probative value, it must at least advise the jury that the inference drawn by the doctor is more probably correct than incorrect. If the probabilities are in balance, the matter is left to speculation. Speculation filtered through a jury is still speculation. *Crewse v. Munroe,* 224 Or 174, 179, 355 P2d 637 (1960).

The trial court properly set aside the verdict.

Affirmed.