**James D. WEST, Appellant,**

v.

**ADMINISTRATRIX OF the ESTATE of Richard NERSHAK, Appellee.**

**No. 880.**

Supreme Court of Alaska.

April 26, 1968.

C. R. Kennelly, Nome, for appellant.

Russell E. Arnett, Anchorage, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

Appellant was sued for willfully and maliciously injurying Richard Nershak, thereby causing his death.[1] The jury returned a verdict in appellee's favor for $18,400.

1. In West v. State, 409 P.2d 847 (Alaska 1966), appellant's conviction of manslaughter based on the same facts was affirmed by this court.

Appellant has appealed on the grounds that the court erred in failing to grant his motion for a directed verdict, for judgment notwithstanding the verdict, that the evidence was insufficient to sustain the verdict and that the court erred in denying his motion for new trial.

Appellant and his wife were the owners of the Board of Trade Bar in Nome, Alaska. Appellant was tending the bar on the evening of April 17, 1964. Appellant's wife and several friends were sitting at the bar. Nershak, a 58 year old Eskimo, who was intoxicated or nearly so, was also sitting at the bar. According to appellant's witnesses, Nershak annoyed appellant's wife and on one occasion took hold of her. Appellant's testimony was that he had warned Nershak several times to leave his wife and her friends alone; that when Nershak took hold of his wife, appellant forcibly removed him from the bar through the front door. According to appellant, he shoved Nershak against the wall twice; then held him by the clothing and shoved and pushed him to the front of the room where he forced him through the front door, where he was left in a squatting position, leaning against the front wall of the building. Appellant then returned to the bar, picked up Nershak's cap and returned to find him in the same squatting position. Appellant stated that he slapped Nershak across the face with the cap about four times and returned inside the bar.

According to appellee's witnesses, appellant shoved Nershak to the floor, kicked his head into the floor as he was attempting to crawl, kicked him in the head again outside the bar, bumped his head against the outside wall several times and then slapped him across the face several times.

Nershak was removed from the sidewalk in front of the bar by a police officer and taken to the hospital where he was pronounced dead by Dr. Robert Fenstermacher after unsuccessful attempts had been made to resuscitate him. At the trial on April 4, 1967, Dr. Fenstermacher stated, in response to a hypothetical question, that in his opinion Nershak's death was caused by the beating he had just received. The doctor further testified that he had performed an autopsy on the body which revealed no specific cause of death, but that in his opinion death resulted from the acute trauma produced by the beating.

Dr. Charles Larson, a practicing pathologist of Tacoma, Washington, testified for appellant, using as a sole basis for his testimony the autopsy report prepared by Dr. Fenstermacher and a pathological report with slides prepared by Dr. Michael F. Beirne three years previously in 1964. Dr. Larson testified that he agreed with the findings of Dr. Beirne with respect to the condition of Nershak's lungs, but added that his examination of the slides revealed that Nershak was suffering from two diseases of the lungs which Dr. Beirne's report failed to mention. One was asbestosis, which consisted of a deposit of asbestos in the lungs. The other disease was emphysema which consisted of dilated air spaces in the lungs, many of which were broken. Dr. Larson testified that in his opinion Nershak did not receive a beating severe enough to have caused death and that in his opinion Nershak died of alcoholic cardio myopathy.

Appellant's argument on all of the points raised is essentially the same: that Dr. Fenstermacher admitted that his autopsy had not revealed a specific cause of death; that his opinion that Nershak's death was caused by the beating was therefore unsupported and amounted to conjecture; that Dr. Larson's testimony, wherein he reported his findings on asbestosis, emphysema and the condition of Nershak's heart and liver and his unequivocal expert opinion that death was caused by acoholic cardio myopathy, were supported by the record, were not denied, and should have been accepted by the court as a sufficient basis for granting a directed verdict.

■ In Crawford v. Rogers,[2] in speaking of the sufficiency of expert testimony, this court said:

> Whether or not the opinion was a conjecture in the sense of being formed upon insufficient evidence, or was a reasonably accurate conclusion, was for the jury to determine.

In that case we held that if the trial judge felt that the jury could receive appreciable assistance from the opinion of the expert witness, this court would not interfere with his exercise of discretion in allowing the testimony to go to the jury, in the absence of an abuse.

■ We do not believe that the trial judge abused his discretion in submitting the expert testimony of Dr. Fenstermacher and Dr. Larson to the jury. Nor do we believe that the court erred in refusing to grant appellant's motions for a directed verdict and judgment notwithstanding the verdict.

In Snipes v. March [3] this court held that where the evidence was such that fair minded men, in the exercise of reasonable judgment, could differ on the question of fact to be determined, then the matter should be submitted to the jury and that it would be error to grant judgment notwithstanding the verdict. In Saxton v. Harris [4] the same holding was reached with respect to motions for directed verdict and judgment notwithstanding the verdict.[5]

■ Dr. Fenstermacher first examined Nershak approximately ten minutes after the assault and found him to be dead. Within two hours he commenced an autopsy which revealed a laceration on the upper lip with blood on the inside, an incisor broken at the gum line with fresh blood, a small sub-capular hemorrhage on the upper pole of the right kidney which was fresh. Dr. Larson's lengthy and detailed testimony was based entirely on his analysis of Dr. Fenstermacher's autopsy report and Dr. Beirne's pathological report. The testimony of the two experts was directly conflicting on the question of the cause of Nershak's death. Fair minded men in the exercise of reasonable judgment, in reviewing the testimony, could differ in their conclusions as to the cause of Nershak's death, therefore the trial judge properly submitted the question to the jury. There was sufficient evidence to support the verdict for appellee.

■ We do not believe that the trial court abused its discretion in refusing to grant appellant a new trial.

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. * * * From a review of the record we cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.[6]

The judgment is affirmed.

2. 406 P.2d 189, 192 (Alaska 1965).

3. 378 P.2d 827, 828–829 (Alaska 1963).

4. 395 P.2d 71, 73 (Alaska 1964).

5. To the same effect: National Bank of Alaska v. McHugh, 416 P.2d 239, 242 (Alaska 1966).

6. Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964) (footnotes omitted).