James Robert **HAISLEY**, Jr., Appellant,

v.

Robert James **GRANT**, Appellee.

No. 1201.

Supreme Court of Alaska.

July 1, 1971.

---

James R. Blair, Rice, Hoppner, Blair & McShea, Fairbanks, for appellant.

Millard F. Ingraham, Ingraham & Niewohner, Mike Stepovich, Fairbanks, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, and CONNOR, JJ.

## OPINION

RABINOWITZ, Justice.

The principal issue raised by this appeal is whether the trial court was correct in excluding opinion testimony as to the degree of appellee Grant's intoxication at the time he drove his vehicle into the rear of appellant's vehicle. We have concluded that the trial court's ruling was erroneous, and that this case should be remanded to the superior court for a new trial.

Factually the case stems from an automobile collision which occurred at Scotty Creek on the Alaska Highway at approximately 8 p. m. on August 27, 1966. Just before impact appellant Haisley was traveling in a southerly direction nearing the Scotty Creek turn off where he intended to make a left turn off the Alaska Highway. According to Haisley, he saw appellee Grant's vehicle approaching from the rear. He switched on his left turn signal, looked into his rear view mirror, and observed Grant's car 100–300 yards behind him. He then gradually pulled over to the left-hand lane in order to let the other vehicle go

around him to his right. Haisley testified that just as he was ready to make his indicated left-turn, Grant's vehicle struck his vehicle in the rear. Haisley's wife died shortly after the accident on the way to the hospital.

Grant's version of the accident was that he began to pass Haisley's vehicle when he was about three car lengths behind it. Just prior to making the pass he had been traveling at 34 miles per hour, but accelerated to about 45–50 miles per hour in order to make the pass. Prior to impact he did not notice any turn signals but he did observe, at close range, that the brake lights on Haisley's vehicle were on. After he saw the brake lights come on, Grant "cut [his] wheel to the right and pumped [his] brakes" in an attempt to regain his prior position behind Haisley's car, but was unable to do so.

Grant further testified that he had previously made a number of trips over this section of the Alaska Highway while it was under construction during the summer of 1966. Grant admitted that during the early stages of the highway construction work being carried out near Scotty Creek he had observed a number of 15-mile-per-hour speed limit signs at various points along the construction zone. On the day of the accident, however, he did not notice any posted speed limit signs in the vicinity of the Scotty Creek road construction area.

Shortly after the accident, Grant told an Alaska State Police Trooper that he had consumed about seven bottles of beer and three drinks of rye whiskey with ginger ale between 9:30 a. m. and 6 p. m. on the day of the accident. He further informed the officer that only one of the beers was consumed between 8 a. m. and 3 p. m.

Appellant Haisley filed a civil action to recover damages both for his own personal injuries and as administrator of the estate of his deceased wife. After a trial by jury, verdicts in favor of Grant were entered.

In this appeal Haisley asserts that the trial court committed reversible error when it refused to admit the testimony of an expert witness on the subject of appellee Grant's intoxication, in response to a hypothetical question put to the witness by Haisley's counsel; that further error was committed by the trial court's denial of his motion for a directed verdict on the issue of negligence; and additional error was committed by the trial court when it refused to grant his motion for a new trial or, in the alternative, for judgment notwithstanding the verdict.

## EXCLUSION OF OPINION TESTIMONY

It appears that despite our sanguine expectations that "the most horrific and grotesque wen on the fair face of justice"[1] was soon to be removed, the hypothetical question continues to obstruct the quest for truth.[2]

At the trial appellant Haisley called a physician and asked him the following hypothetical question:

"Doctor, I'd like you to assume that the following facts are true. Will you assume that on the date of August 28, 1966, the defendant in this case was a normal, healthy young man who had consumed seven bottles of beer and three drinks of rye and ginger. Will you further assume that the defendant has taken the stand in this case and has testified that he consumed only one bottle of beer between the hours of 8:30 and approximately 1:30 p. m. Yukon Territory time. Between 8:30 and 1:30 p. m. Yukon time. Yukon time isn't necessarily important to you, Doctor, but may be to the jury in this hypothetical. You may therefore assume that at least six bottles of beer were consumed sometime after 1:30 p. m. Yukon time. Will you further assume that the defendant consumed at least three drinks of rye and

---

1. Judge Learned Hand, New York Bar Association, Lectures on Legal Topics 1921–22 (New York 1926).

2. Crawford v. Rogers, 406 P.2d 189, 195–196 (Alaska 1965) (Rabinowitz, J., concurring).

ginger between the hours of 4:30 p. m. and 7 o'clock p. m. Yukon time. Will you further assume that at 7:30 p. m. Yukon time defendant was involved in an automobile accident and he was the driver of one of the automobiles concerned. You may further assume that the vehicle being driven by the defendant struck another car in the rear while being operated at a speed of at least 45 to 50 miles per hour upon a gravel road. You may further assume that at the time of the accident it was dark enough so that· both vehicles were using headlights. Now, Doctor, based upon this set of facts do you have any opinion as to whether the defendant's physical and mental abilities would be impaired as a result of his consumption of alcoholic beverages so that he no longer had the capacity to drive a vehicle with the collection [caution?] characteristic of a sober person of ordinary prudence under the same or similar circumstances?"

After an objection had been made and discussion had between court and counsel, the following additional facts were added to the hypothetical question:

"＊　＊　＊ Dr. Evans, will you further assume that there has been no testimony that the six bottles of beer were anything other than ordinary bottles of beer. The testimony has also shown that the three drinks which defendant consumed were purchased at an establishment on the Alaska Highway known as Seaton's Bar. And will you further assume that the testimony has shown that defendant had a meal at 4:00 Yukon time and had some hamburgers—two hamburgers and chips at an earlier time in the day.

"I would include in my hypothetical that defendant is an individual of approximately 5 foot 10 inches in height and somewhere in the vicinity of 160 pounds."

After objection to the hypothetical question had been voiced, the court excused the jury and proceeded to hear the proposed testimony of Dr. Evans, considering it as an offer of proof until such time as it was

satisfied that the testimony should be admitted. In the course of the offer of proof, Dr. Evans indicated that the amount of alcohol in each drink and each bottle of beer consumed by Grant was important in estimating the amount of blood alcohol, and the corresponding degree of intoxication of Grant at the time of the accident. Grant's objection went largely to the point that the amount of alcohol in the beverages consumed had never been established. The objection was also based on the ground that the hypothetical assumed a number of other factors which had not been proven definitely. Grant asserted that four facts necessary as a basis for the hypothetical question were still unproven, namely the quantity of rye whiskey in each rye and ginger ale, the percentage of alcohol in the rye whiskey, the size of the beers, and the percentage of alcohol in each beer.

During the offer of proof which was made outside the presence of the jury, Grant's counsel elicited from the doctor that the size of drinks would in fact make · a difference in Grant's driving ability at the time in question, and that he assumed each drink contained one ounce of rye, but that Grant's driving ability would be impaired even if each drink contained as little as three-fourths of an ounce of whiskey.

At the conclusion of his offer of proof, counsel for Haisley argued that the doctor should be allowed to answer the hypothetical question, pointing out that the doctor would explain to the jury that his opinion was based on the assumption that each drink contained one ounce of liquor; that the jury would be instructed as to the relationship between the hypothetical assumption and the validity of and weight to be accorded to the opinion; that it was open to Grant to cross-examine the witness as to the underlying data for his opinion; and that Grant could, in addition, introduce evidence that the drinks he consumed that day contained less than an ounce of alcohol. Haisley's counsel further argued that the result of the trial judge's ruling would make it "impossible to ever have any testi-

mony of any drinking that had been done in a bar as to how much alcohol was consumed[,] only that it was a mixed drink."

■ The trial court ruled the proferred opinion testimony inadmissible on the ground that Haisley, as the proponent, had the burden of producing evidence as to quantity of alcohol contained in the drinks which were consumed by Grant on the day of the accident, and that there were simply too many unproven assumptions to permit the jury to hear the witness's opinion. As indicated at the outset, we are of the view that the trial court's ruling was erroneous.

Essentially we find we are in agreement with the argument advanced by Haisley's counsel at trial in support of his position that the opinion evidence was admissible. Although made in another context, we think our recent statement in Ferrell v. Baxter, 484 P.2d 250, 257 (Alaska 1971), has relevance to the proper disposition of the evidentiary ruling at issue in this appeal. In *Ferrell,* we said in part:

> "It is certainly fairer to require one who violates the law to excuse or justify his actions than to require an innocent bystander to show why there was no excuse or justification. Moreover, in many cases, * * * the defendant will be more easily able to explain his action —or inaction—than can the plaintiff."

■ We think this approach is equally applicable to the problem at hand for we believe it fairer to place upon the drinker the burden of production and persuasion that the drinks he consumed deviated from the norm. Normally it is easier for the consumer of alcoholic beverages to ascertain the facts as to the alcoholic content of the drinks he consumed. Where such proof cannot be adduced, it is more than just that the burden of production and persuasion as to deviation from the norm be placed on the drinker, because ordinarily drinks contain normal amounts of alcohol. The practical implications of placing the burden of showing the alcoholic content of any particular drink upon the victim, when proof cannot be adduced, is to cre-

ate a presumption that the drinks contained no alcohol. This presumption appears to be in conflict with common sense. Proof will often be impossible to obtain because bartenders doubtless do not remember how much liquor they give to each patron, and proof will often be very expensive, because representatives of distant breweries and distilleries might have to be brought to Alaska to be asked under oath what percentage of alcohol their products contain. Under the circumstances we believe the better approach is to admit opinion testimony based on the assumption that the drinks in question were of ordinary alcoholic content. The consumer of the beverage will then be placed in the position of proving any variations from the norm. We think that in placing the initial burden of proving the exact alcoholic content on the person seeking to introduce the expert testimony the trial court was too severe, and in effect gave Grant an unjustifiable advantage. As counsel for Haisley so cogently argued below, any weakness in the expert's opinion flowing from data which the witness used as the basis for his opinion could have been brought home to the jury by appropriate cross-examination. The range of possibilities as to the alcoholic content of the drinks Grant consumed is rather limited. Cross-examination as to the effects of various amounts of alcohol at the lower limits of that range would be a relatively simple matter and would not unduly consume judicial energies. Since the subject matter of the hypothetical question was within the everyday experience of the average juror, we believe that the jury could properly judge the reasonableness of the assumption made concerning the amount of alcohol in the drinks. For the weight to be accorded to an expert's opinion is, for all practical purposes, exclusively within the province of the jurors as triers of the facts.

We believe that this conclusion is consonant with the letter and spirit of our prior decisions involving hypothetical question issues. Two years ago in Maddocks v. Bennett, 456 P.2d 453, 454–456 (Alaska 1969),

we upheld a ruling admitting expert testimony, based upon a hypothetical question, though one of the assumptions was unsupported in the evidence, when the result was an immaterial variance between the hypothesis and the evidentiary facts. We noted that the trial court court had admonished the jury at the close of the plaintiff's case to consider the effect of the unsupported assumption and had later given a continuing instruction to this effect. The trial court ruled that the variance was not sufficiently material to invalidate the entire expert testimony, but only affects its weight, which was for the jury to decide. In *Maddocks*, we reaffirmed our liberal view favoring the admission of expert testimony if based upon sufficient facts and if the trial judge believes that the jury could receive "appreciable assistance" from it. In such cases, a ruling admitting expert testimony, with proper cautionary instructions if necessary, will not be disturbed on appeal unless an abuse of discretion is shown.[3] In *Maddocks*, we said:

"In summary some courts openly allow discretion to the trial judge to allow hypotheticals with immaterial variances to go to the jury. Most courts state that the facts in a hypothetical question must be supported by some evidence, but they usually mean the material facts. We believe that consistent with the liberal attitude toward expert opinion and hypothetical questions which this court has already adopted, the appropriate procedure is to allow immaterial variances to go to the jury with the appropriate cautionary instructions."[4]

## REFUSAL OF A DIRECTED VERDICT FOR APPELLANT HAISLEY

■ At the close of Grant's case, Haisley moved for a directed verdict on the question of Grant's negligence. The motion was based upon the assertion that the speed limit at the point of collision was 30 miles per hour, and that Grant was driving his vehicle at a speed of 45–50 miles per hour at the time of the collision. In the recent case of Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), we held that unless an adequate excuse or justification is shown, the violation of our state traffic regulations constitutes negligence in itself. However, in the case before us a factual issue was presented as to the existence of any signs warning of the speed limits on the day of the accident, or at least the existence of any signs of which Grant would have had knowledge. Accordingly, there is a dispute over whether a condition precedent to the application of the traffic regulation was fulfilled. Such a factual dispute properly precluded the entry of a directed verdict in favor of Haisley. Taylor v. Interior Enterprises, Inc., 471 P.2d 405, 407 (Alaska 1970).

## REFUSAL TO GRANT JUDGMENT N. O. V. OR NEW TRIAL

Finally Haisley asserts as error an abuse of discretion by the trial court in failing to grant his motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The grounds for this motion were the errors asserted in refusing to allow the expert opinion testimony of the physician Haisley called and the refusal to grant Haisley's motion for a directed verdict on the issue of negligence. Since we conclude that the exclusion of the expert's opinion testimony cannot be characterized as harmless error,[5] the case must be remanded for a new trial, and therefore we need not pass upon the contention that the trial court abused its discretion in refusing to grant these motions.

Reversed and remanded for a new trial.

---

3. *See also* Crawford v. Rogers, 406 P.2d 189, 191 (Alaska 1965), where we held that the relevant facts need not be propounded in hypothetical form as a prelude to obtaining an expert witness's opinion when such facts had been previously placed into evidence.

4. Maddocks v. Bennett, 456 P.2d 453, 456 (Alaska 1969).

5. Civ.R. 61.

ERWIN, J., not participating.

CONNOR, Justice (dissenting in part).

I cannot agree that the exclusion of the offered expert testimony was reversible error.

To be sure, it might have been preferable to let the opinion into evidence and then allow counsel for appellee to cross-examine the witness about the bases of the opinion. If the expert's knowledge of the factors supporting the hypothetical assumptions where shown to be faulty, this would go to the weight of the testimony. If sufficiently critical to the opinion testimony, the lack of knowledge about the precise alcoholic content of the drinks might even require the court to strike the opinion testimony. This, of course, is not what occurred here.

If the court had admitted the opinion testimony, I might well be for affirming its action. I see this case as one where the trial court's discretion could be exercised either for or against admission of the offered testimony.

The consumption of alcoholic beverages is a common occurrence throughout Alaska. No doubt the size of drinks served in a given community tends to be standardized to some extent. Jurors, particularly in Alaska, may be assumed to have some familiarity with the average strength and the usual effect of drinks purchased across a bar. To require proof of the precise strength of the drink before information about drinking could be placed before the jury would be most unreasonable. It is more realistic, in a drinking culture such as ours, to permit "juroral notice" of these matters.

When an expert opinion about the effects of alcohol is offered, the problem of proof is different. The opinion is offered because, with its asserted basis in special knowledge or science, it may be of value to the jury. Lewis v. State, 469 P.2d 689, 694 (Alaska 1970). That is, it may shed greater light on the question under scrutiny than would the unaided lay knowledge possessed by jurors. For this reason it should rest on knowledge and factual bases more firm than only guesswork or surmise. This does not mean that each factor underlying an expert opinion must be established beyond scientific doubt. It is enough if the opinion is founded on data which would be considered reliable by persons knowledgeable in the field of expertise as to which the opinion is rendered. As we have said about the admission of experimental evidence, "Absolute certainty is not required if the experiment would be considered valid by persons skilled or knowledgeable in the field which the experiment concerns." Love v. State, 457 P.2d 622 (Alaska 1969). The same considerations apply to expert opinion testimony.

If in this case the expert had indicated any familiarity with the average size drink served in the general community, or if such information had been placed in evidence by any other means, a proper foundation for the opinion testimony would, in my opinion, have been supplied. But, lacking this foundation, I do not believe it was an abuse of discretion for the judge to exclude the answer.

Nor can I agree with the majority that the burdens of production and persuasion should be shifted to the consumer of intoxicating liquor. The case cited in support of such a holding, Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), seems inapposite. Imbibing alcohol is not in itself a criminal offense. There has been no prima facie showing that appellee violated any statute or regulation so as to require him to show excuse or justification for his conduct.

Accordingly, I would hold that exclusion of the expert testimony was not reversible error.