**Kevin A. MAINES, Appellant,**

v.

**KENWORTH ALASKA, INC., Kenworth Northwest, Inc., and Paccar, Inc., d/b/a Kenworth Truck Company, Appellees.**

No. S–11255.

Supreme Court of Alaska.

April 6, 2007.

---

challenges the decision of the superior court to strike two affidavits proffered in opposition to summary judgment. We conclude that the superior court did not abuse its discretion in excluding an unsigned and unsworn declaration but did err in excluding an affidavit from a late-disclosed expert without considering lesser alternative sanctions. We also conclude that the expert's affidavit raises a genuine issue of material fact as to negligent maintenance on the part of Kenworth but not PACCAR. We therefore reverse the order granting summary judgment in favor of Kenworth but affirm the order granting summary judgment in favor of PACCAR on this claim. Finally, we conclude that the expert's affidavit raises a genuine issue of material fact as to negligent manufacture on the part of PACCAR and therefore reverse the order granting summary judgment to PACCAR on this claim.

Michael A. Stepovich, Stepovich Law Office, Fairbanks, for Appellant.

Matthew C. Christian, Borgeson & Burns, PC, Fairbanks, for Appellees Kenworth Alaska, Inc. and Kenworth Northwest, Inc.

Aimee Anderson Oravec, Winfree Law Office, APC, Fairbanks, for Appellee PACCAR, Inc.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

The driver of a dump truck appeals the superior court's grant of summary judgment to both PACCAR, the truck manufacturer, and Kenworth, the truck distributor, for negligent maintenance and manufacture of the truck. The driver alleges that the truck leaked refrigerant from its air conditioning system and that he developed respiratory problems as a result of the leak. The driver

## II. FACTS AND PROCEEDINGS

### A. Factual History

Kenneth Maines procured temporary, seasonal employment as a truck driver at Exclusive Landscaping and Paving, Inc. (Exclusive) in Fairbanks in June 1999. Maines drove a Kenworth dump truck, designated Truck 2–6, for Exclusive. The truck was manufactured by PACCAR, Inc., was sold to Exclusive by Kenworth,[1] and was used extensively in heavy construction. Truck 2–6 was a new truck purchased and first used by Exclusive in April 1998. Prior to Maines's use of the truck, three repairs were made by Kenworth under PACCAR's general warranty. Only one of these repairs concerned the air conditioning system and occurred on July 23, 1998 when Kenworth replaced an O-ring on the suction hose at the compressor and charged the air conditioning system with 3.4 pounds of refrigerant.

During the summer of 1999 and after the warranty had expired, a total of four repairs were made to Truck 2–6 during Maines's use of the truck. Two of those repairs involved leaks of refrigerant from the air conditioning

---

1. Kenworth Northwest, Inc. (the regional distributor), Kenworth Alaska, Inc. (the local Kenworth dealer), and PACCAR, Inc., d/b/a Kenworth Truck Company (the manufacturer) are three distinct entities. We refer to Kenworth Alaska and Kenworth Northwest collectively as "Kenworth."

system. On June 10, 1999, an existing leak in the air conditioning system was identified. A loose connection hose was repaired by tightening the hose and charging the system with one pound of R–134A refrigerant. On July 16, 1999, another leak was identified that was "wholly unrelated to and separate from the repair made on June 10, 1999." A fitting at the condenser line was tightened and the system was again charged with refrigerant. The amount of refrigerant replaced is unknown. The last two of the four repairs were made to the air conditioning system in August 1999. But there is no evidence to indicate leaks were present or that additional refrigerant was needed for the system.

Maines began driving the truck in June 1999. Two months later, in August 1999, Maines complained to Dr. Eric Tallon, an ear, nose, and throat specialist, that he had developed the following "around the clock" symptoms: "sore throat, nasal voice with congestion, shortness of breath, wheezing, congestion of the lungs, sweats at night, occasional palpitation, poor sleep, occasional bouts of nausea with vague arthralgia of the upper extremities, including shoulders." Maines maintained that these symptoms developed over a six-week time frame starting in June 1999. He also contended that he "had never had any history of bronchitis, sinusitis, or been treated for any form of sleep apnea or sleep disorder" prior to May 1999. At the time, Maines stated he was working nine-to twelve-hour work shifts six days a week and that his symptoms were worse while at work. Maines was referred to a pulmonologist, Dr. Owen Hanley, who placed him on several bronchodilators to treat asthma.

In December 2000 Dr. Stephen McCurdy became the first to relate Maines's upper and lower respiratory problems to his exposure to the refrigerant, R–134A, during 1999. The relevant portions of Dr. McCurdy's affidavit state: "I am familiar with R–134A; it is a fluorinated hydrocarbon.... Low exposures with fluorinated hydrocarbons are typically associated with transient upper airway irritation.... Exposure[ ] to high concentrations has been associated with chronic bron-

chial hyperresponsiveness (asthma), as now affects the patient." Dr. Dana Headapohl concurred with this assessment during an independent medical examination for Maines's workers' compensation claim. Her diagnosis stated that "[m]ost of Mr. Maines's symptoms during the time of the leaking refrigerant are consistent with exposure to Freon, with the exception of arthralgias."

At Exclusive's request, Dr. Brent Burton examined Maines on August 1, 2002. Dr. Burton concluded in an affidavit submitted to the trial court that "none of [Maines's] physical symptoms are consistent with exposure to R–134A." He concluded that the symptoms "are more likely than not related to Mr. Maines' poor physical condition and morbid obesity, chronic rhinosinusitis with anatomically deviated septum, heat and stuffy air in the truck cab, potential sleep apnea, and/or a combination of any or all of these factors." Dr. Burton also noted that a history of marijuana use and occasional use of pipe tobacco would significantly affect his physical symptoms. Maines does have a history of marijuana use since at least 1986.

Lance Eike, an expert witness for PAC-CAR, explained how R–134A flows between the evaporator, compressor, and condenser and that O-rings seal each connection point, stating: "In the event any refrigerant leaked from an O-ring connection, the leak would occur within the engine compartment itself, not in the cabin." He maintained that the air conditioning system has "multiple barriers to prevent engine compartment air from entering the cabin," and that "[t]he only failure of the air conditioning system that could leak refrigerant directly into the cabin is a failure in the evaporator core. No other component failure has the potential to allow refrigerant directly into the cab.... The failure rate of the evaporator under warranty in similar models is just over one-half of one percent...."

But Maines disputed Eike's contentions through an affidavit of Christopher Meltvedt, an automotive expert. The affidavit stated: "The opinion that I hold, on a more-probable-than-not basis, that refrigerant leaked directly in to the cabin of Kenworth dump truck 2–6, is based on the medical condition of Mr.

Maines, as set out in the reports of Dr. McCurdy and Dr. Headapohl; my knowledge and experience working with this type of air conditioning system; the repair orders generated by Kenworth [and] the continued loss of refrigerant from the air conditioning system."

## B. Procedural History

Maines filed a complaint against Kenworth and PACCAR on June 11, 2001, alleging that they negligently manufactured and maintained Truck 2–6. The negligent maintenance claim mainly implicates a number of repairs undertaken during Truck 2–6's warranty period and during the period Maines drove the truck. Maines alleges that this negligence caused him to be exposed to hazardous materials, which in turn caused him to develop respiratory problems. Maines sought damages in excess of $100,000.

Maines also filed a claim for workers' compensation benefits at roughly the same time seeking temporary total disability benefits, permanent partial disability benefits, and continuing medical benefits. These claims were denied by the Alaska Workers' Compensation Board on August 18, 2003. Kenworth and PACCAR argue that this denial of benefits renders Maines's appeal moot.

On April 4, 2003, PACCAR and Kenworth filed separate motions for summary judgment. On April 21, 2003, Maines filed a motion for a thirty-day extension of time to respond, which was granted over PACCAR and Kenworth's objection. On May 21, 2003, Maines submitted his opposition to the motions for summary judgment, including an unsigned affidavit of Dr. McCurdy and an accompanying notice of filing an unsigned affidavit, which explained that the affidavit needed to be mailed back to California for a signature and would not be returned in time to meet the deadline. On June 12, 2003, Maines was permitted to supplement his opposition with an Alaska Civil Rule 26 disclo-

sure statement of Meltvedt. Superior Court Judge Richard D. Savell noted in his order permitting supplementation that "[t]his ruling does not preclude or address the argument that use of an automotive expert was not timely disclosed or that the affidavit is substantively deficient."

On June 25, 2003, Judge Savell granted PACCAR's motion for summary judgment concluding that there was no evidence of negligent manufacture by PACCAR or Kenworth and rejecting the theory of res ipsa loquitur. Judge Savell also issued oral findings that the affidavit of Dr. McCurdy was inadmissible for the purpose of opposing summary judgment. Judge Savell indicated he strongly disfavored allowing Meltvedt's affidavit, but he permitted Maines additional time to oppose Kenworth's motion to strike Meltvedt's affidavit.

On July 29, 2003, District Court Judge Winston S. Burbank was appointed Superior Court Judge Pro Tempore and presided over the remaining issues in the case. On August 13, 2003, Judge Burbank issued a written order that deemed Meltvedt's statement inadmissible for the purpose of opposing summary judgment; the written order also explained in greater detail the rationale behind Judge Savell's earlier decision to exclude Dr. McCurdy's affidavit. Judge Burbank issued a second order on August 13, 2003, granting Kenworth's motion for summary judgment on the remaining issue of negligent maintenance and repair. Maines appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[2] When ruling on a motion for summary judgment, we draw all reasonable inferences in the non-movant's favor and will affirm only if there is no genuine issue of material fact.[3] We "may consider any argument ascertainable from the record, even if the superior court did not rule on it."[4] Once a movant has satisfied his burden of estab-

---

**2.** *Cabana v. Kenai Peninsula Borough,* 50 P.3d 798, 801 (Alaska 2002) (citing *United Airlines, Inc. v. Good Taste, Inc.,* 982 P.2d 1259, 1262 (Alaska 1999)).

**3.** *Robles v. Shoreside Petroleum, Inc.,* 29 P.3d 838, 841 (Alaska 2001) (citing *Dayhoff v. Temsco*

*Helicopters, Inc.,* 772 P.2d 1085, 1086 (Alaska 1989)).

**4.** *Cabana,* 50 P.3d at 801 (quoting *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995)).

lishing an absence of genuine issues of material fact and his right to judgment as a matter of law, "the non-movant is required, in order to prevent summary judgment, to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists."[5] In Alaska, "*any* evidence sufficient to raise a genuine issue of material fact,"[6] so long as it amounts to "more than a scintilla of contrary evidence,"[7] is evidence sufficient to oppose summary judgment.

■ Whether collateral estoppel applies is also a question of law that we review de novo.[8] A trial court's decision to admit or exclude evidence, including whether to exclude expert testimony, is reviewed for an abuse of discretion.[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Excluding Dr. McCurdy's Affidavit from Its Consideration of Summary Judgment

■ Maines submits that the superior court improperly excluded the unsigned and unnotarized affidavit of Dr. McCurdy. Kenworth responds that the superior court's decision was correct because Dr. McCurdy's declaration was originally submitted unsigned, was never notarized nor sworn, did not state that a notary was unavailable, and hence did not meet the statutory requirements of an affidavit under either AS 09.63.010[10] or AS 09.63.020.[11]

The affidavit of Dr. McCurdy was submitted unsigned when it was first filed with the court on May 21, 2003. A copy of a faxed signature page was later filed in open court on the date of oral argument, June 25, 2003. On July 21, 2003, another unnotarized signature page, dated July 8, 2003, was filed with the superior court. This page did not include the signature of a notary public and instead contained the signatures of Susan Warren–Alef and Phillippa Savage, who affirmed that Dr. McCurdy signed the page on July 8, 2003. There is no sworn statement indicating that Dr. McCurdy's affidavit was made truthfully or under penalty of perjury, and no statement was ever submitted indicating that a notary was unavailable, as required by AS 09.63.020. There is also no explanation of the titles or positions of Warren–Alef or Savage indicating that they fall within the requirements of AS 09.63.010. At the time of oral argument on summary judgment on June 25, 2003, Maines admitted that he had still not filed a notarized affidavit with the court, nor served a copy on the appellees.

At oral argument on June 25, 2003, Judge Savell concluded that this affidavit was inadmissible for purposes of summary judgment. Judge Burbank issued a written order explaining the rationale for this decision on August 13, 2003. Judge Burbank reasoned that the superior court was bound by our holding in *Bennett v. Weimar* that "assertions of fact in unverified pleadings and memoranda cannot be relied on in denying a motion for summary judgment."[12] Judge Burbank further quoted *Bennett:* "Alaska

5. *Parker v. Tomera,* 89 P.3d 761, 765 (Alaska 2004) (quoting *State, Dep't of Highways v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978) (citation omitted)).

6. *In the Matter of J.B.,* 922 P.2d 878, 881 n. 4 (Alaska 1996) (emphasis added).

7. *Martech Constr. Co., Inc. v. Ogden Envtl. Servs., Inc.,* 852 P.2d 1146, 1149 n. 7 (Alaska 1993) (citation omitted).

8. *Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc.,* 99 P.3d 553, 558 (Alaska 2004) (citing *Alaska Contracting & Consulting, Inc. v. Alaska Dep't of Labor,* 8 P.3d 340, 344 (Alaska 2000)).

9. *Kava v. Am. Honda Motor Co., Inc.,* 48 P.3d 1170, 1173 (Alaska 2002) (citing *Hutchins v.*

*Schwartz,* 724 P.2d 1194, 1197 (Alaska 1986)); *State v. Coon,* 974 P.2d 386, 398 (Alaska 1999).

10. AS 09.63.010 lists six categories of persons permitted to take an oath, affirmation or acknowledgment in Alaska.

11. AS 09.63.020 permits a person to certify in writing "under penalty of perjury" that the matter is true. "The certification shall state the date and place of execution, the fact that a notary public or other official empowered to administer oaths is unavailable, and the following: 'I *certify* under penalty of perjury that the foregoing is true.'"

12. 975 P.2d 691, 694 (Alaska 1999) (quoting *Jennings v. State,* 566 P.2d 1304, 1309–10 (Alaska 1977)).

statutes 'contain no … provision permitting unsworn declarations in lieu of affidavits.' " [13] We explained in *Bennett* that "we are not willing to equate an unsworn declaration with an affidavit for purposes of summary judgment proceedings. This is an additional safeguard which we wish to retain." [14] Dr. McCurdy's declaration does not satisfy any of the requirements in Alaska Civil Rule 56 [15] or AS 09.63.020, and Maines also offers no explanation for his failure to comply with these provisions.[16] Maines argues that the rule should be expanded to permit affidavits when "there are facts that could cause the trial court to believe that the affiant was identified at the time the document was signed, and there is an indication that the affiant's statements were truthful." But Maines fails to explain why Dr. McCurdy was unable to have his affidavit notarized in a timely fashion; why Maines failed to supply a notarized version of the affidavit to the superior court at any point; and why the superior court should consider the affidavit to be truthful without a sworn statement by Dr. McCurdy to that effect, especially given the ample period of time permitted by the superior court from the original filing date. Moreover, Maines did not request additional time to file a notarized affidavit. The superior court's decision to exclude this affidavit was not an abuse of discretion.

### B. It Was Error for the Superior Court To Exclude the Affidavit of Christopher Meltvedt from Summary Judgment Consideration.

■ Maines contends that the superior court improperly excluded the affidavit of Christopher Meltvedt, an automotive expert. The superior court issued a pre-trial order on August 14, 2002 that required Maines to file and serve notice of expert witnesses he planned to call and their fields of expertise by November 18, 2002. Maines was permitted to supplement his initial expert witness information by December 2, 2002. Maines did not identify his plan to call an automotive expert until May 27, 2003, the day final disclosures were due, and he did not formally request to supplement his opposition to summary judgment with Meltvedt's report and affidavit until May 29, 2003. In this request, Maines stated that Meltvedt's affidavit was not available at the time Maines filed his original opposition on May 21, 2003, but he offered no further explanation for his failure to disclose Meltvedt as an expert by any of the previous deadlines set by the trial court. At the time, Judge Savell granted Maines's request to supplement, but specifically reserved for later consideration the issue of whether the statement was timely disclosed or substantively deficient.

Judge Burbank later concluded that Meltvedt's statement was inadmissible on two grounds: first, that admission of the affidavit in violation of the pre-trial order would create unfairness and prejudice to the defendants; and second, that the affidavit and report were conclusory and failed to assert a factual basis for the expert's opinions. The trial court relied on *Yukon Equipment, Inc. v. Gordon*[17] as support for its decision. In *Yukon Equipment,* Yukon deposed the opposing parties' expert after the deadline for

---

13. 975 P.2d at 695.

14. *Id.* at 696.

15. Alaska Civil Rule 56(e) sets forth the proper form of affidavits submitted for summary judgment purposes.

16. Maines argues that because Dr. McCurdy's affidavit was executed in California and California authorizes unsworn declarations, this court should make an exception to its statutory requirements. *See Stationers Corp. v. Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 42 Cal.Rptr. 449, 398 P.2d 785, 787 n. 2 (1965). We need not decide whether this would excuse Maines, however, because he also failed to satisfy the requirements

for an unsworn statement or declaration in California. The California Code of Civil Procedure requires that an "unsworn statement, declaration, verification, or certificate," must "recite[ ] that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." Cal.Civ.Proc Code § 2015.5 (2005).

17. 660 P.2d 428, 431 (Alaska 1983), *overruled on other grounds by Williford v. L.J. Carr Inv., Inc.,* 783 P.2d 235, 237 n. 5 (Alaska 1989).

filing witness lists, and only then did Yukon decide to secure an expert of its own.[18] We noted that "[t]he precise situation that the protective orders were designed to avoid occurred in this case: as soon as Yukon became informed of the other parties' expert's opinion, it then hired its own expert to rebut that opinion." [19] We concluded that to allow Yukon this expert amounted to an "unfair advantage" because Yukon could thereby save considerable time and expense as well as focus its expert's energies on just the points needing rebuttal rather than having the expert undertake a thorough and independent investigation.[20] Maines maintains that there was no prejudice to Kenworth or PACCAR akin to that in *Yukon Equipment* because Maines did not wait until he knew which experts PACCAR or Kenworth were going to use before hiring Meltvedt. Maines disclosed Meltvedt on the same day that the defendants filed their witness lists and Meltvedt had examined the truck on two previous occasions, with representatives of both defendants present during the March 2003 vehicle inspection. Therefore, *Yukon Equipment* concerns about avoiding prejudice and expense to the parties are not at issue in this case.

Alaska Civil Rule 37(b)(3) provides that when a court imposes sanctions for violations of discovery orders, "[t]he court shall not make an order that has the effect of establishing or dismissing a claim or defense or determining a central issue in the litigation unless the court finds that the party acted willfully." We have previously held that an order precluding expert witnesses from testifying amounts to a Rule 37(b) sanction if it effectively "determin[es] a central issue in the litigation." [21] Before imposing such a sanction, Rule 37(b)(3) requires a finding of "willfulness," as well as the consideration of several factors, including whether lesser sanctions would adequately protect the opposing party.[22]

"Willfulness" is defined as "a conscious intent to impede discovery, and not mere delay, inability or good faith resistance." [23] Here, the exclusion of Meltvedt's affidavit effectively determined a central issue in the case. Meltvedt's testimony was the only evidence submitted by Maines to support the necessary causal link between Maines's symptoms and the problems in the truck's air conditioning system which according to Meltvedt resulted in refrigerant leaking directly into the cab of the truck. As the superior court noted, without this testimony, there was no genuine issue of material fact to survive a motion for summary judgment. Yet the superior court made no finding of willfulness, explaining instead that "[r]egardless of whether Maines' non-compliance was willful, the timing of Maines' disclosures sheds light on the very unfairness and prejudice the court tried to prevent through the pretrial order."

In addition, it is difficult to see how any prejudice caused by Maines's late disclosure of Meltvedt could not have been cured by a lesser sanction in this case.[24] First, Kenworth and PACCAR were on notice of Maines's consulting relationship with an ex-

---

**18.** *Yukon Equipment,* 660 P.2d at 431–32.

**19.** *Id.* at 432.

**20.** *Id.*

**21.** *Sykes v. Melba Creek Mining, Inc.,* 952 P.2d 1164, 1170 (Alaska 1998) (reversing the superior court's order prohibiting Sykes, who had missed the filing deadlines, from calling any expert witnesses because the order " 'ha[d] the effect of . . . determining a central issue in the litigation' ") (quoting Civil Rule 37(b)(3)).

**22.** *Sykes,* 952 P.2d at 1169 ("[W]e have repeatedly held that the trial court's discretion is limited when the effect of the sanction it selects is to impose liability on the offending party, establish the outcome of or preclude evidence on a central issue, or end the litigation entirely. Before extreme sanctions of this kind may properly be imposed, '[t]here must be "willful noncompliance" with court orders, or "extreme circumstances," or "gross violations" of the Rules.' ") (quoting *Arbelovsky v. Ebasco Servs., Inc.,* 922 P.2d 225, 227 (Alaska 1996)).

**23.** *Hawes,* 634 P.2d at 378 (citations omitted).

**24.** *See Sykes,* 952 P.2d at 1171 (trial court's decision to preclude expert witness testimony as sanction for untimely submission of witness list was reversible error where there was little indication that accepting untimely lists would have caused defendant serious prejudice and there was no consideration of lesser sanctions).

pert because Meltvedt was present at the inspection of the truck in March 2003. Moreover, Kenworth and PACCAR both filed their final expert witness lists on May 27, 2003, the same date as Maines. Thus, final disclosure of experts by *all* parties occurred on a date that was nine days before the close of discovery on June 5, 2003. If depositions of experts could not be completed by the discovery deadline, a brief extension could have remedied this problem. Costs of the late depositions could have been assessed against the offending party. Ample time remained to cure any problems because more than two months remained until the scheduled trial date of August 4, 2003.

We have previously noted that the "[e]xploration of alternative sanctions will not be assumed.... If meaningful alternative sanctions are available, the trial court must ordinarily impose these lesser sanctions."[25] Although Maines's failure to comply with the final pre-trial deadline may have warranted some sanction, the trial court was required to consider meaningful, lesser alternatives to the exclusion of Meltvedt's affidavit, which had the effect of determining a central issue in the case.[26] Hence, it was an abuse of discretion to exclude the affidavit instead of exploring lesser sanctions.

We also disagree with the trial court's alternative basis for excluding Meltvedt's report: that it was conclusory. The superior court relied on *Haisley v. Grant*[27] when striking Meltvedt's affidavit, explaining that "[e]xpert testimony must be based on sufficient facts and must be of appreciable assistance to the jury." But the superior court overlooks that *Haisley* actually "reaffirmed our liberal view *favoring* the admission of

expert testimony."[28] We have previously explained that "[w]eaknesses in data used by an expert in formulating his opinion are properly weighed by the jury after being brought out by cross-examination. The jury should normally decide whether an expert's opinion is based on sufficient facts."[29] In this case, Meltvedt asserted numerous sources for his opinions and maintained that his opinions were based on conversations with Maines, as well as on disclosures by Kenworth, other expert affidavits, and twelve photographs of the truck's engine and cabin. If any deficiency existed in Meltvedt's testimony, it could have been corrected through discovery, through cross-examination at trial, or through jury instructions. We therefore conclude that it was error for the superior court to exclude Meltvedt's affidavit.

■ The dissent asserts that Maines failed to address on appeal the issue of whether Meltvedt's affidavit was conclusory until his reply brief, and, as a result, waived the issue. While the dissent is correct that an issue raised for the first time in a reply brief is deemed to have been waived,[30] we believe that Maines has successfully preserved this particular issue at every stage of the legal process. First, in the superior court, Maines did explicitly address the adequacy of Meltvedt's affidavit and whether it was based on sufficient facts and would have been of assistance to the jury. At oral argument in the superior court, the following exchange occurred:

> The Court: Where does Mr. Meltvedt say what actions—what Kenworth did wrong that fell below the standard of care? I can't find that. Is it in there?

---

25. *Arbelovsky*, 922 P.2d at 227.

26. *See Ball v. Birch, Horton, Bittner & Cherot*, 58 P.3d 481, 488 (Alaska 2002) (noting that "vexatious delays" and "misrepresentations regarding the availability of expert testimony" justified enhanced attorney's fees but not litigation-ending sanctions); *see also Honda Motor Co., Ltd. v. Salzman*, 751 P.2d 489, 493 (Alaska 1988) (ultimate sanction was justified after trial judge gave defendant several oral and written warnings, which defendant failed to heed, and judge extended deadlines, imposed less drastic sanctions, and endured violations of court orders).

27. 486 P.2d 367, 371 (Alaska 1971).

28. *Id.* (emphasis added).

29. *N. Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1189 (Alaska 1977) (citing *Haisley*, 486 P.2d at 370 and *Maddocks v. Bennett*, 456 P.2d 453, 455 (Alaska 1969)).

30. *Crittell v. Bingo*, 83 P.3d 532, 536 n. 19 (Alaska 2004) (holding that a reply brief " 'may raise no contentions not previously raised in either the appellant's or appellee's briefs' ") (quoting Alaska R.App. P. 212(c)(3)).

Mr. Stepovich: That they did—he can offer an opinion. [Evidence Rule] 703, he offers an opinion. Now, if somebody wants to cross examine him on his opinion—this is an expert. He can give that opinion and he can sit down and they can—you know, it's a factual—they can cross examine him and say, "Well, what's the basis of that opinion? What are you talking about? You're supporting of that, you're using that. . . ."

At oral argument in the superior court, Maines also directly addressed the argument that Meltvedt's affidavit lacked foundation:

Mr. Stepovich: The second point is that this affidavit has no support for the purpose of opposing summary judgment. Well, we would submit that that's—he has set out his opinions under [Evidence Rule] 703. We've complied with Civil Rule 56(e) as far as the form of the affidavits. He gives his opinion that it leaks in there, that there was negligent repair. They continuously repaired it through the summer. So clearly there's enough to—I mean, if the Court wants to throw[ ] this guy out after some other motion is filed, there's some other argument, then that's a different story. But based on what's raised here today in summary judgment, there's a question of fact, and, taken in the light most favorable to the non-moving party, there's issues that the jury needs to decide.

And in his written materials opposing the motion to exclude Meltvedt, Maines elaborated on his position, stating:

The Defendant's assertion that Plaintiff's experts (Meltvedt, McCurdy, and Headapohl) all fail the Daubert/[Coon] test is premature and without merit. . . . The Court's gatekeeper function for [this] expert witness testimony is better left to the court's sound discretion at trial, after the Court has heard a concise and thorough recitation of their testimony on direct examination. It is undisputed that the trial court does have an obligation under the Evidence rule to fulfill this "gatekeeper"

function for all witness testimony. This function is better served at trial when the witnesses are presented, and evidence is taken.

Moreover, in his initial appellate brief, Maines argued that the superior court "abused its discretion in excluding Meltvedt's affidavit" by "misinterpret[ing] the facts" and ignoring evidence that Meltvedt had inspected the vehicle in question on at least two occasions. Although it is a close call, we find this argument constitutes a challenge to the superior court's ruling that Meltvedt's affidavit was neither based "on sufficient facts . . . [nor] of appreciable assistance to the jury." Our conclusion is fortified by the character of the superior court's decision that Meltvedt's report was conclusory—the superior court expressed its decision without elaboration and Maines's response similarly pays but little attention to this point.

Finally, Maines addressed the question of the sufficiency of Meltvedt's affidavit in his appellate reply brief, arguing that "Meltvedt was qualified to give an opinion, was familiar with the vehicle in question, and he had the requisite experience." Maines also pointed out in his appellate reply brief that "Meltvedt opined that the repairs to the vehicle fell below the standard acceptable in the automotive industry, and that leaking refrigerant, more probably than not, leaked into the vehicle's cab. This was sufficient to raise a genuine issue of material fact."

We conclude that Maines adequately addressed both bases for the superior court's decision to strike Meltvedt's affidavit and did not waive the issue on appeal.[31] Because it was error to disallow Meltvedt's affidavit and because Meltvedt's affidavit raises a genuine issue of material fact as to Kenworth's breach, we conclude it was error to grant summary judgment to Kenworth.

### C. The Superior Court's Grant of Summary Judgment to PACCAR on the Claim of Negligent Maintenance Was Not Error.

■ Maines argues that there is an issue of material fact on the number of repairs

---

**31.** Although we do not rely upon this basis today, we note that it is within the discretion of the court to reach an issue that has otherwise been waived. *See Vroman v. City of Soldotna,* 111

P.3d 343, 349 n. 22 (Alaska 2005) (exercising "our discretion" to consider a claim that was arguably waived after being only generally touched upon in the appellant's brief).

made to the truck by PACCAR and, therefore, the superior court was in error in granting summary judgment on this claim. But Maines does not, in either his materials opposing summary judgment or his briefs on appeal, provide direct evidence that PACCAR ever conducted any repairs on the truck. Instead, abundant evidence shows that it was Kenworth who conducted the three repairs to the truck undertaken during the warranty period.[32] Maines in his own affidavit states as much.

The ruling on summary judgment is to be made based on the record the parties have actually presented, not on one potentially possible.[33] Because Maines did not allege a breach of warranty claim and did not provide any evidence that PACCAR or its employees undertook any repairs, the superior court's grant of summary judgment to PACCAR on the claim of negligent maintenance was not in error.

### D. It Was Error for the Superior Court To Grant Summary Judgment to PACCAR on the Claim of Negligent Manufacture.

■ Maines additionally asserts a claim of negligent manufacture[34] against PACCAR. The superior court found that there was "no evidence that something was manufactured improperly in [the truck's] design or that its design was deficient. This evidence ... would have to be generally produced and supported by the opinions of engineers and other automotive experts. Nothing submitted by the plaintiff goes to the manufacture." Maines argues that there is evidence in the

record sufficient to raise a genuine issue of material fact. We agree.

PACCAR's own expert witness, Lance Eike, states that "[t]he only failure of the air conditioning system that could leak refrigerant directly into the cabin is a failure in the evaporator core." Eike then goes on to argue that none of the repairs made to the vehicle implicated the evaporator core. But his argument only addresses whether Kenworth was negligent in maintaining the truck and does not implicate PACCAR's manufacture or design of the truck.

What does go to the issue of defect is Eike's statement that "[t]he failure rate of the evaporator [core] under warranty in similar models is just over one-half of one percent." Eike appears to advance this failure rate as a normal attribute of the design of the truck. But reasonable people might regard a rate of failure in which one out of every two hundred trucks will develop a toxic gas leak within the warranty period as unacceptably high. While the record does not address the standards of the industry, whether an alternative design is feasible,[35] or whether this predicted failure rate is a result of negligent design or manufacture, it would seem that the question is one of fact for the jury.

■ A question of fact is also present on the issue of causation. The Eike affidavit confirms that only a defect in the evaporator core could cause a leak of this kind of toxic gas into the truck cab. Eike's discussion of failure rates and evaporator core testing practices confirms that evaporator core defects and the consequences of a leak are

---

**32.** These three repairs were made during the warranty period and, had Maines brought a breach of warranty claim, could have been attributed to PACCAR. PACCAR could therefore be liable for the negligence of its agents under a theory of *respondeat superior*. But Maines did not proceed on this theory. Even if he had, whether circumstantial evidence would be enough to show that PACCAR had the kind of control over Kenworth required by Alaska courts is an open question. *See, e.g.,* discussion of *respondeat superior* and the requirements of joint control in *Northern Lights Motel*, 561 P.2d at 1186–88.

**33.** *Madeirense do Brasil S/A v. Stulman–Emrick Lumber Co.,* 147 F.2d 399, 405 (2d Cir.1945).

**34.** Maines brings this case in negligence and not strict liability. Alaska adopted the strict liability approach to product defect claims in *Clary v. Fifth Avenue Chrysler Center,* 454 P.2d 244 (Alaska 1969). Since then, the majority of product defect cases have been brought in strict liability. Cases brought under a theory of negligence are rare, but are nevertheless possible.

**35.** Alaska does not require the proof of a reasonable alternative design to be an absolute requirement. *See* discussion of the *Barker* test in *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871, 880–86 (Alaska 1979).

foreseeable. Evidence in the record, other than the affidavit of Dr. McCurdy, further suggests that there is a question of fact whether Maines's symptoms were of the type to occur in a person exposed to this type of toxic gas or whether they were due to his lifestyle.

For Maines to defeat a motion for summary judgment, he must set forth specific facts amounting to a genuine issue of material fact.[36] To create a genuine issue of material fact there must be "more than a scintilla of contrary evidence."[37] Here, Maines's evidentiary showing on the issues of defect and causation is sufficient to defeat a motion for summary judgment. We therefore conclude that it was error to grant summary judgment to PACCAR on the claim of negligent manufacture.

### E. The Doctrine of Collateral Estoppel Does Not Render Maines's Appeal Moot.

 Kenworth and PACCAR contend that Maines is bound by the Alaska Workers' Compensation Board finding that Maines did not suffer a work-related respiratory ailment and that the Board's decision renders this appeal moot because the Board's decision should be given collateral estoppel effect.[38] On July 24 and 25, 2003, the Board conducted an administrative hearing regarding Maines's claim that he was exposed to refrigerant that caused him injury while working at Exclusive. The Board considered whether Maines was entitled to temporary total disability benefits, permanent partial impairment benefits, transportation expenses, and attorney's fees and costs. The Board denied all of these claims and issued a written opinion on August 18, 2003, five days after the resolution of the civil case on summary judgment. The Board's decision thus was not considered by the superior court in rendering its order granting summary judgment on August 13, 2003. The parties must first raise this issue in the trial court before we can consider whether the doctrine of collateral estoppel applies in this instance. It is well-established that "[m]atters that were not made issues in the trial court ... or that were not tried before the court" will not be considered on appeal.[39] "[A]n appellate brief can neither append nor refer to evidence outside the record...."[40] Because the collateral estoppel effect of the Board's decision was not properly raised or briefed at the superior court level, this issue is not properly before us.

## V. CONCLUSION

We AFFIRM the exclusion of the McCurdy affidavit. But because we REVERSE the exclusion of the Meltvedt affidavit, we REVERSE the grant of summary judgment to Kenworth on the negligent maintenance claim. Because the affidavit does not make out a genuine issue of material fact as to negligent maintenance on the part of PACCAR, we AFFIRM the partial grant of summary judgment to PACCAR on this claim. Because we conclude a genuine issue of material fact is raised as to negligent manufacture, we REVERSE the grant of summary judgment to PACCAR on this claim.

**36.** *Martech,* 852 P.2d at 1149 n. 7 (citation omitted); *see also Meyer v. State,* 994 P.2d 365, 367 (Alaska 1999).

**37.** *Martech,* 852 P.2d at 1149 n. 7 (citation omitted).

**38.** Collateral estoppel, also known as issue preclusion, "is the doctrine that prevents the relitigation of an issue that was actually litigated and was a critical and necessary part of the earlier judgment. The judgment on the issues litigated in the first action, then, is binding upon the parties in all later litigation in which those issues arise." Bryan A. Garner, A Dictionary of Modern Legal Usage 121 (1987). Res judicata is the same principle, but broader, and implies that no further issues exist relating to the dispute. *Id.* Generally "a prior decision or finding on any relevant issue in a [workers'] compensation proceeding is res judicata as to the same issue in a subsequent suit at law to recover for the same injury or death, whether the effect is to defeat the suit or to defeat a defense to the suit." *See* 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 79.72(d) (1999).

**39.** *Lumbermens Mut. Cas. Co. v. Cont'l Cas. Co.,* 387 P.2d 104, 109 (Alaska 1963).

**40.** *State, Dep't of Natural Res. v. Transamerica Premier Ins. Co.,* 856 P.2d 766, 776 (Alaska 1993) (citing *L.L.M. v. P.M.,* 745 P.2d 599, 600 (Alaska 1987)).

CARPENETI, Justice, with whom EASTAUGH, Justice, joins dissenting in part.

In Part IV.B. of today's Opinion, the court holds that it was error for the superior court to exclude the Meltvedt affidavit from summary judgment consideration. The superior court excluded the affidavit on two grounds: its lateness and its lack of substance. Because the appellant has not timely addressed the second basis for the superior court's decision, I would hold that the appellant has waived any objection to this second basis for the decision, and affirm the superior court on the basis of waiver.

Judge Burbank ruled that the Meltvedt affidavit was late and that it was so conclusory as to be useless to oppose summary judgment. In his opening brief Maines argues that the superior court erred in its lateness ruling, but he does not challenge the superior court's alternative basis for its ruling. The appellant has therefore waived argument on this issue. This is a sufficient basis for affirmance.

We have consistently found that parties have waived challenges to lower court action by (1) failing to raise an issue in the lower court or to include it in points on appeal;[1] (2) failing to brief an issue to this court after including it as a point on appeal;[2] or (3) failing to brief an issue adequately.[3]

Here, Maines has failed to address the superior court's ruling that the Meltvedt affidavit and report were conclusory and thus insufficient at every critical juncture of the appellate process: It is not in the statement of points on appeal, it is not mentioned at all

in the appellant's brief, and it is therefore not briefed adequately. It is mentioned for the first time in Maines's reply brief, too late under our case law. Maines has therefore waived consideration of the issue.

Today's Opinion tries to find in the appellant's opening brief a challenge to the superior court's ruling that the Meltvedt affidavit was conclusory. Conceding that the issue is a "close call," the court points to Maines's assertion in his opening brief that the superior court abused its discretion by "misinterpret[ing] the facts" and ignoring evidence that Meltvedt had inspected the vehicle in question on two occasions. But this sparse language does not go at all to the issue whether the superior court erred in finding the affidavit to be conclusory; it goes to when Kenworth and PACCAR ought to have realized that Meltvedt was going to be called as an expert witness. The section of the appellant's brief in which this language is found begins: "The trial court excluded the affidavit of Chris Meltvedt *because it found that Meltvedt was not identified as an expert prior to its filing.*" (Emphasis added.) The entire section is then devoted to showing that Kenworth and PACCAR were on notice that Meltvedt was an expert from an early stage of the case. In sum, there is not a word in Maines's opening brief about whether the Meltvedt affidavit was conclusory and without factual support.

As noted above, Maines did not mention the issue at all until his reply brief. Our case law is perfectly clear that an argument may not be raised for the first time in a reply brief.[4]

---

1. *Gunderson v. Univ. of Alaska, Fairbanks,* 902 P.2d 323, 327 n. 5 (Alaska 1995) (holding that argument not raised before trial court or not included in statement of points on appeal will not be considered on appeal).

2. *Wasserman v. Bartholomew,* 38 P.3d 1162, 1171 (Alaska 2002) (finding waiver where party listed issue in points on appeal but failed to brief it); *Union Oil Co. of Cal. v. State, Dep't of Revenue,* 677 P.2d 1256, 1259 n. 6 (Alaska 1984) (finding waiver where numerous points on appeal were not briefed).

3. *Shearer v. Mundt,* 36 P.3d 1196, 1199 (Alaska 2001) (holding that *pro se* litigant waived argument for failure to "develop" it); *City of Fair-*

*banks v. Rice,* 20 P.3d 1097, 1106 (Alaska 2000) (holding that issue was so "sparsely briefed" as to be waived).

4. *Lewis v. State, Dep't of Corr.,* 139 P.3d 1266, 1272 (Alaska 2006) ("We do not consider arguments raised for the first time in a reply brief."); *Sengupta v. Univ. of Alaska,* 139 P.3d 572, 580 (Alaska 2006) ("We deem arguments raised for the first time in a reply brief to have been waived."); *Lakloey, Inc. v. Univ. of Alaska,* 141 P.3d 317, 323 n. 18 (Alaska 2006) ("Because Lakloey raises this contention for the first time in its reply brief, we do not consider it."); *Reust v. Alaska Petroleum Contractors, Inc.,* 127 P.3d 807, 819 (Alaska 2005); *Simpson v. State, Commercial*

Despite Maines's failure to raise the issue of the conclusory nature of the Meltvedt affidavit in a timely fashion, the Opinion nonetheless considers the superior court's alternative basis for summary judgment—that Meltvedt's affidavit lacked substance and was conclusory—and holds that this alternative basis was erroneous. But Maines's failure to address this issue before his reply brief leaves us with no basis for considering it. Even the plain error doctrine [5]—a doctrine not addressed by today's Opinion—would not allow us to reach an issue not raised by the appellant before us. While we may affirm on any basis supported by the record,[6] it is quite another thing to go beyond the issues raised by the appellant in order to reverse.[7]

Because Maines did not mention the superior court's ruling that the Meltvedt affidavit was insufficient in his points on appeal and he did not raise the issue in his opening brief, I would hold that he has waived any argument that the superior court erred in refusing to consider the Meltvedt affidavit. I would affirm the judgment of that court on that basis.[8] I respectfully dissent.

---

*Fisheries Entry Comm'n*, 101 P.3d 605, 611 (Alaska 2004) (argument waived because first raised in reply brief in superior court).

5. *See, e.g., Dorman v. State*, 622 P.2d 448, 461 (Alaska 1981) (party may raise issue on appeal, even after failure to raise it at trial, if the issue involves "plain error"). Thus, plain error, a doctrine used to excuse a party's failure to raise an issue in the trial court, requires that the appellant have addressed the issue in the appellate court. Maines did not address the issue of the Meltvedt affidavit's insufficiency before us.

6. *Hall v. TWS, Inc.*, 113 P.3d 1207, 1210 (Alaska 2005).

7. *See Still v. Cunningham*, 94 P.3d 1104, 1111 (Alaska 2004) ("Issues that are not raised in the superior court are waived and cannot be asserted on appeal as grounds for overturning a judgment."); *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 788 (Alaska 2002) (holding that appellate court will not consider new issues in order to secure reversal of lower court).

8. Waiver is a sufficient basis to resolve this issue. But I note in passing that Judge Burbank's decision that the Meltvedt affidavit was insufficient because of its conclusory nature appears to be well within the court's discretion: The Meltvedt affidavit merely sets out Meltvedt's background, recites that he has reviewed documents produced in the case, and concludes that the "analysis, service, maintenance and repair" of the truck "fell below the standards acceptable in the truck and automotive service and repair industry" so that "a failure in the [truck's] air conditioning system ... resulted in the leaking of refrigerant." Other than this flat conclusion, unsupported by *any* specific facts, there is nothing. The Meltvedt report adds greater detail as to Meltvedt's background and the documents he reviewed, but recites the same conclusory language with regard to his opinion.