NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALBERT S., | ) | |
| | ) | Supreme Court No. S-15150 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3PA-10-00045/46/ |
| v. | ) | 47/48/49/50 CN (Consolidated) |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1482 - March 12, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellant. Joanne Grace, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Krista N. Anderson, Assistant Public Advocate, Anchorage, and Richard K. Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

\*      Entered under Appellate Rule 214.

1.     Albert S.[1] appeals the trial court's termination of his parental rights to his six children, who are Indian children for purposes of the Indian Child Welfare Act.[2]  Albert argues that the trial court (1) relied on evidence not presented at trial, thereby violating his  constitutional rights, (2) failed to adequately consider his indigent status, and (3) erred in finding that the State made active efforts to prevent the breakup of his family.[3]  We find no merit to Albert's challenges and therefore affirm the trial court's order.

2.     In April 2010, the Office of Children's Services (OCS) filed an emergency petition to adjudicate Albert's six children as children in need of aid.  The petition alleged that the children's mother left the children with a neighbor after a night of drinking and the next day could not be reached.  According to the neighbor, there were other occasions, too, when the  mother left the children with her "unexpectedly"

---

[1]     Pseudonyms are used to protect the privacy of the family.

[2]     25 U.S.C. §§ 1901-1963 (2006).

[3]     Under relevant Alaska Child in Need of Aid (CINA) statutes and provisions of CINA Rule 18(c), parental rights to Indian children may only be terminated if OCS shows:

By clear and convincing evidence that (1) the child has been subjected to conduct or conditions described in AS 47.10.011; (2) the parent has failed within a reasonable time to remedy the conduct or conditions that placed the child at substantial risk of harm; and (3) OCS has made "active efforts to provide remedial services and rehabilitative programs" to prevent the breakup of the Indian family, but that these efforts have been unsuccessful.

Beyond a reasonable doubt that the continued custody of the child by the parent "is likely to result in serious emotional or physical damage to the child."  This finding must be supported by testimony from a qualified expert witness.  Alaska R. CINA 18(c); *see Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 761 (Alaska 2009).

and did not return "for days." Albert was incarcerated at the time and unable to care for the children.

3. The petition described both parents' criminal histories and their prior involvement with OCS. In 2008, Albert was convicted of third-degree assault for assaulting the children's mother. He was convicted of driving under the influence in 1998, assault and family violence in 2002, and criminal child neglect in 2005. OCS had also received nine protective services reports, mostly related to the parents' alcohol consumption.

4. The case was pending before Judge Eric Smith for more than two years, during which time he granted many continuances for the convenience of the parents. The termination trial was finally held in October 2012; neither parent was in attendance, and Albert's counsel had had no contact with her client since his release from prison.

5. The court heard the testimony of Karen Johnson, Albert's OCS case worker, and Fennisha Gardner, a social work supervisor at Child Protective Services, who was stipulated to be an expert on the effects of abandonment on children. In addition, Albert's attorney stipulated to the admission of 24 exhibits and all prior petitions and reports. The admitted exhibits included case plans, the criminal records of both Albert and the children's mother, domestic violence protective orders, Department of Corrections records for both parents, substance abuse treatment records, and an expert report from psychologist Judy Gette about the harmful effects of abandonment and domestic violence on children. The OCS petitions and the report of the guardian *ad litem* summarized OCS's efforts and the parents' lack of engagement.

6. The evidence showed that OCS had referred the parents to substance abuse and mental health assessments, parenting classes, and family violence awareness

groups; had provided for supervised visitation between the parents and the children; had given Albert bus passes and cab vouchers to attend treatment sessions; had assigned a secondary social worker to the parents' case; and had sent bi-weekly letters to the parents' tribe in an effort to engage the parents in case planning. The evidence showed that despite OCS's efforts, Albert visited his children only three times during the 30 months they were in OCS custody preceding the October 2012 trial. The evidence showed that Albert did not seek substance abuse treatment until January 2012, and that he did not make any other progress on his case plan.

7. The superior court found that Albert's children were in need of aid due to abandonment, domestic violence, and substance abuse,[4] that Albert failed to remedy the conduct or conditions that placed his children in need of aid, and that OCS made active efforts to reunify the family. The court also found that it was in the children's best interests for Albert's parental rights to be terminated.

8. On appeal, Albert first argues that the trial court erred and violated his due process rights by relying in its termination order on evidence that had not been presented at trial. This argument fails because the evidence on which the court relied was contained in the exhibits, petitions, and reports, the contents of which Albert's attorney stipulated could be admitted as evidence. There is sufficient evidence in the record to support all of the trial court's findings, and Albert's due process rights were not violated.[5]

---

[4] AS 47.10.011(1), (8), and (10).

[5] *See Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 927 (Alaska 2011) ("[P]arental rights may be terminated where such steps are necessary to protect the welfare, health and even lives of the children. This is a situation where the State's interest in the welfare of the children involved[]
(continued...)

9. Albert correctly notes that in the case of an Indian child, CINA Rule 14 requires that a stipulation to adjudication or disposition must be in writing, agreed to in open court, and signed by the parent. But Albert incorrectly seeks to apply this rule to his attorney's stipulation to the admission of evidence. The stipulation at issue here was not to an adjudication or disposition, and the superior court did not treat it as such; following the stipulation, the court went on to take evidence and make the findings and conclusions necessary to support a termination.[6]

10. Albert's second claim — that the trial court failed to consider the effect of his indigency on his attempts at treatment — also fails. Albert argues that OCS gave him a referral to a substance abuse treatment program that would have cost $1,500, an amount he plainly could not afford. But it appears from the record that Albert was in fact referred to this program by Adult Probation, not OCS, though OCS mentions the referral in its termination petition. OCS referred Albert to free substance abuse counseling through Cook Inlet Tribal Council, which Albert failed to attend. We find no merit to Albert's claim that his indigency was weighed against him in the termination of his parental rights.

11. It is unclear whether Albert challenges the trial court's active-efforts finding as inadequate even when the petitions, reports, and exhibits to which his attorney

---

[5](...continued) outweighs the interest of the parents.").

[6] Albert also argues that if his counsel's stipulation is interpreted to include the hearsay statements in the prior reports and petitions, she provided ineffective assistance. Since this claim is raised in a footnote in Albert's reply brief, we do not consider it. *Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 330 (Alaska 2007) ("Our case law is perfectly clear that an argument may not be raised for the first time in a reply brief.").

stipulated are considered. In any event, we conclude that the evidence, as summarized above in paragraph 6, was sufficient to support the finding.[7] The OCS caseworker assigned to Albert's case testified at trial and cursorily described OCS's efforts, and Albert's counsel had the opportunity to cross-examine her. We see no error in the trial court's finding of active efforts.

13. The superior court's order terminating Albert's parental rights to his children is AFFIRMED.

---

[7] *See Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 856-57 (Alaska 2013) ("[A]ctive efforts entail a social worker taking a parent through the steps of a reunification case plan, rather than simply devising a plan and requiring the parent to develop his or her own resources.").